# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with<br>ASSISTANTDIRECTOR39@GMAIL.COM that is stored<br>at the premises controlled by Google | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:25MJ 236 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1349 and 1347 | Conspiracy to commit health care fraud; health care fraud |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Andrew LeFaivre
*Applicant's signature*

HHS-OIG Special Agent Andrew LeFaivre
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means).*

Date: 06/20/25

_____
*Judge's signature*

City and state: Greensboro, North Carolina

Hon. L. Patrick Auld
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

  This warrant applies to information for the following TARGET ACCOUNTS stored at premises owned, maintained, controlled, or operated by Google, LLC, an email, website, and cloud services provider that is headquartered at 1600 Amphitheatre Parkway, Mountain View, California:

1. khawajaizhan@gmail.com ("TARGET ACCOUNT 1")

2. order.onyxmed@gmail.com("TARGET ACCOUNT 2")

3. return.onyxmed@gmail.com ("TARGET ACCOUNT 3")

4. assistantdirector39@gmail.com ("TARGET ACCOUNT 4")

## ATTACHMENT B

### Property to Be Searched and/or Seized

**I.    Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on 02/28/2025 (extension on 05/27/2025) and 05/27/2025 with Google Reference Numbers 85423726 and 95103586, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2023 to December 31, 2024, unless otherwise indicated:

    a.  All business records and subscriber information, in any form kept, pertaining to the Accounts, including:

        1.  Names (including subscriber names, user names, and screen names);

        2.  Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

        3.  Telephone numbers, including SMS recovery and alternate sign-in numbers;

        4.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

        5.  Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

        6.  Length of service (including start date and creation IP) and types of service utilized;

        7.  Means and source of payment (including any credit card or bank account number); and

8. Change history.

b. All device information associated with the Accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c. Records of user activity for each connection made to or from the Accounts, including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d. The contents of all emails associated with the Accounts, including stored or preserved copies of emails sent to and from the Accounts, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails.

e. All Location History and Web & App Activity indicating the location at which the Accounts were active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

f. The contents of any Google Drives. Google Drive and Keep: The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

Google is hereby ordered to disclose the above information to the government within **14** days of issuance of this warrant.

2

## II. Information to be seized by the government

All information described above in Section I that constitute evidence and/or instrumentalities of violations of 18 U.S.C. §§ 1349 and 1347 those violations involving Chaudhry Shabbir Ahmed, Izhan Khawaja, Hamza Khawaja, or others and occurring after January 1, 2023, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters, in the following form:

(a) Evidence referencing Medicare or any other health benefit program, including billing for such programs.

(b) Evidence referencing Dune, Prospect, Onyx, or other durable medical equipment businesses in which Ahmed, Izhan, or Hamza were involved;

(c) Evidence referencing the procurement or sale of durable medical equipment;

(d) Evidence referencing patient complaints, including any returns of medical equipment;

(e) Evidence referencing financial transactions or accounts where Medicare funds were deposited;

(f) Evidence indicating how and by whom the Accounts were accessed or used, at the time of the creation or accessing of any of the items subject to seizure;

(g) Evidence indicating the identity of the person(s) who created or used the Accounts, including records that help reveal the whereabouts of such person(s).

(h) Evidence indicating the identity of the person(s) who communicated with the Accounts, including records that help reveal their whereabouts.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HHS-OIG may deliver a complete copy of the seized or copied

3

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

If the government identifies seized materials, that are potentially attorney-client privileged or subject to the work product doctrine ("protected materials"), the Prosecution Team will discontinue review, segregate out any protected materials, and apply to the Court for further relief.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS KHAWAJAIZHAN@GMAIL.COM; ORDER.ONYXMED@GMAIL.COM; RETURN.ONYXMED@GMAIL.COM; AND ASSISTANTDIRECTOR39@GMAIL.COM | Case No. 1:25mj _236_ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Andrew LeFaivre, having been duly sworn, depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am employed as a special agent with the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations ("HHS-OIG") and have been so employed since 2002.   As a special agent with HHS-OIG, I am responsible for investigating allegations of fraud against HHS programs, including the Medicare program.

2.      I am a "federal law enforcement officer" within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. As a special agent, I have received extensive training related to health care fraud schemes and have conducted or participated in numerous investigations of alleged violations of health care fraud and related statutes.

3.      The information contained in this affidavit is known to me through involvement in the investigation, my background, training, and experience, and information provided by other individuals, investigators, and agencies involved in this investigation, including the Federal Bureau of Investigation ("FBI").

4.      I am investigating a conspiracy to commit health care fraud and health care fraud, among other offenses. I make this affidavit in support of an application for a search warrant for information associated with the email accounts "khawajaizhan@gmail.com" ("TARGET ACCOUNT 1"), "order.onyxmed@gmail.com" ("TARGET ACCOUNT 2"), "return.onyxmed@gmail.com" ("TARGET ACCOUNT 3"), and assistantdirector39@gmail.com ("TARGET ACCOUNT 4") (collectively, the "TARGET ACCOUNTS"). The TARGET ACCOUNTS are stored at premises owned, maintained, controlled, or operated by Google, LLC ("Google"), an email, website, and cloud services provider that is headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

5.      The information to be searched is described in the following paragraphs and in Attachment A, attached hereto and incorporated as if fully set forth herein. This affidavit is made in support of an application for a search warrant under the Stored Communications Act, Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Google to disclose to the government copies of the information (including the content of communications) further described in Attachment B, attached hereto and incorporated as if fully set forth herein. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

6.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully assert that there is probable cause to believe that violations of 18 U.S.C. §§ 1349 (conspiracy to commit health care fraud) and 1347 (health care fraud) (the "SUBJECT OFFENSES"), among others, have been committed by Izhan Khawaja, Hamza Khawaja, Chaudhry Ahmed, companies attributed to Chaudhry Ahmed, including Dune Medical Supply, LLC, and Prospect Health Solutions, Inc, and other unidentified individuals. I further submit that

2

based on the evidence set forth below, and all reasonable inferences from that evidence, there is probable cause to believe that evidence, instrumentalities, and fruits of these violations, as more fully described in Attachment B, will be found in the TARGET ACCOUNTS, as identified in Attachments A.

7.     Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, it does not contain every fact known to me or other agents.

**GOOGLE, LLC[1]**

8.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

9.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:   the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

3

10.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

11.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them. Google collects and retains data about the location at which Google Account services are accessed from any mobile device. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Accounts created after June 2020 auto-delete

4

Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

12. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

13. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

14. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

15. Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity

5

applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

16.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For example, this case presents a question of who was actually controlling Dune and Prospect. Although Ahmed is listed on paper as the owner of Dune and Prospect, gathering information from Google about the location where the TARGET ACCOUNTS were used and seeing the communications of the TARGET ACCOUNTS may help establish who in fact was responsible for the criminal activity.

6

17.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

18.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

19.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

7

20. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, emails, Internet activity, and documents can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

21. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services, specifically Gmail. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## RETENTION OF INFORMATION FOR AUTHENTICATION

22. In anticipation of litigation relating to the authenticity of data seized pursuant to the warrants, the government requests that it be allowed to retain a digital copy of all seized information authorized by the warrants for as long as is necessary for authentication purposes.

## JURISDICTION

23. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. § 2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### The Subject Offenses

24. Title 18, United States Code, Section 1349 prohibits conspiring to commit certain offenses, including health care fraud pursuant to Title 18, United States Code, Section 1347.

25. Title 18, United States Code, Section 1347 prohibits health care fraud. "Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses,

8

representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services[,]" shall be guilty of a crime.

<u>**Background on Medicare and Durable Medical Equipment**</u>

26.     The Medicare Program is a federally funded health insurance program for eligible persons 65 years of age and older, and certain disabled persons, under which physicians, hospitals and other health care providers are compensated or reimbursed for covered medical services and supplies provided to Medicare beneficiaries. Medicare is a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b).

27.     Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the Department of Health and Human Services ("HHS").

28.     Medicare is subdivided into multiple program "parts." Medicare Part A covers health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covers physician and other licensed provider services and outpatient care, including an individual's access to durable medical equipment ("DME").

29.     DME includes orthotic devices, such as knee braces, back braces, shoulder braces, wrist braces, and other devices. Under Medicare Part B, beneficiaries only receive Medicare-covered DME from "suppliers" that are enrolled in Medicare.

30.     DME is equipment designed for repeated use and for a medical purpose, such as orthotic devices (including back, arm, and knee braces), wheelchairs, prosthetic limbs, collagen dressing, gauze, and hydrocolloid dressing.

9

31.     Medicare reimburses DME companies for items and services rendered to beneficiaries. To receive payment from Medicare, providers must submit or cause the submission of claims to Medicare.

32.     To enroll in Medicare Part B, DME suppliers are required to submit a completed enrollment also known as the "Form CMS-855S" to Medicare. The Form CMS-855S lists many standards necessary to obtain and retain Medicare billing privileges as a DME supplier.

33.     The Form CMS-855S requires applicants to disclose to Medicare any individual or organization with an ownership interest, a financial interest, or managing control of a DME supplier. This includes anyone with 5% or more of an ownership stake, either direct or indirect, in the DME supplier; anyone with a partnership interest in the DME supplier, regardless of the percentage of ownership, any organizations with "managing control" over the DME supplier, as well as any and all "managing employees."

34.     The form also requires the signature of an "authorized official" who certifies, among other things, that the DME supplier will abide by all Medicare laws, regulations, and instructions and not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

35.     A Medicare claim for DME reimbursement is required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician or provider identification number of the provider who prescribed or ordered the equipment.

10

36.     Medicare reimburses claims for DME only if the DME was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by an appropriate medical provider, and actually provided to the beneficiary as billed.

37.     The proper process involves examination of the patient by a physician or other appropriate licensed medical provider. After the examination, the provider is supposed to write a prescription for the beneficiary. The prescription should contain the patient's identifying information, the DME item that the treating provider believes is medically necessary for the patient, and the diagnosis codes relating the patient's medical condition. Absent a valid certification by the treating physician/provider, Medicare lacks the statutory authority to pay the claim.

38.     The prescription is then provided to the DME company, which provides the necessary equipment to the patient and submits a claim directly to Medicare for reimbursement.

39.     The Healthcare Common Procedure Coding System ("HCPCS") codes are published by the American Medical Association. The codes are part of a uniform coding system used to identify, describe, and code medical, surgical, and diagnostic services performed by practicing physicians and other healthcare providers. DME suppliers use HCPCS codes to identify, describe and code equipment and materials that they supply. These codes are used to determine the reimbursement.

**The Relevant Parties**

40.     Dune Medical Supply, LLC ("Dune") was a North Carolina corporation located at 2310 North Centennial Street, Suite 102, High Point, NC 27265, that purportedly provided DME to Medicare beneficiaries.

11

41.     Prospect Health Solutions, Inc. ("Prospect") was a Florida corporation located at 5460 North State Road 7, Fort Lauderdale, FL 33319, that purportedly provided DME to Medicare beneficiaries.

42.     Onyx Med Supply, LLC ("Onyx") was a North Carolina corporation located at 300 S. Westgate Drive, Suite F, Greensboro, NC 27407, that purportedly shipped DME on behalf of Dune and Prospect to Medicare beneficiaries.

43.     Chaudhry Ahmed ("Ahmed") was a resident of Guilford County and was the owner and registered agent of Dune and the owner and registered agent of Prospect. Prior to Ahmed, Izhan Khawaja ("Izhan") was the owner of both Dune and Prospect. According to Medicare enrollment documents, Ahmed is listed on the Form CMS-855S as the owner of both Dune and Prospect. Ahmed's electronic signature is on the Form CMS-855S for Dune and Prospect dated in or about February 2024 and April 2024, respectively. In signing the agreement, the signatory agrees that he will not present, or cause to be presented, any false or fraudulent claim for payment to Medicare. Previous enrollment documents listed Izhan as the owner of Dune and Prospect.

44.     Hamza Khawaja ("Hamza") was a resident of Guilford County and is the member/organizer and owner of Onyx. Hamza and Izhan are brothers who live in High Point, NC.

### The Fraudulent Scheme

45.     From on or about April 27, 2024, through present, Medicare received complaints from hundreds of beneficiaries or providers claiming that Dune was fraudulently billing Medicare for DME that the beneficiaries never received, requested, needed or the provider never ordered. To date, over 580 complaints have been received related to Dune.

46.     From on or about June 1, 2024, through present, Medicare received complaints from hundreds of beneficiaries or providers alleging that Prospect was fraudulently billing

Medicare for DME that the beneficiaries never received, requested, needed or the provider never ordered. To date, over 450 complaints have been received related to Prospect.

**Claims Analysis: Dune**

47.     A review of Medicare claims data revealed that Dune began submitting claims to Medicare around April 2024. Then from around April 2024 through around August 19, 2024, Dune submitted more than 36,000 claims for over 20,000 Medicare beneficiaries, resulting in claims reimbursement requests of over $56.3 million.

48.     Data analysis showed that Medicare has approved disbursement of more than $15.4 million to Dune.

49.     Of the total claims Dune submitted to Medicare, more than $54.1 million were billed to Medicare in the 60-day period ending August 19, 2024, which represented an increase of over 2,400% when compared to the previous 60 days. Based on my training and experience, I know that a significant increase in claim submission over a short period of time, as reflected in Dune's billings to Medicare can be indicative of fraud.

50.     Furthermore, analysis of claims data showed that for approximately 67% of the claims Dune submitted, the beneficiary that allegedly received DME had no prior relationship with the provider that allegedly ordered the DME. This is significant because, as explained, a DME order must be prescribed by an appropriate licensed medical provider based on the beneficiary's underlying condition. If a medical provider has no prior relationship with the beneficiary, it indicates the provider may not be one of the beneficiary's regular medical providers and they may not know whether the DME equipment was medically necessary. Based on my training and experience, I know that a high percentage of claims in which there is no prior relationship between

13

the ordering provider and the beneficiary, as reflected in Dune's billings to Medicare, can be indicative of fraud.

51.     Claims data also showed that approximately 75% of the beneficiaries on whose behalf Dune billed Medicare were identified in a separate investigation indicating that their identities were compromised and used unlawfully by individuals to obtain fraudulent reimbursements from Medicare. Based on my training and experience, compromised Medicare beneficiary information is shared or exchanged between fraudsters and is often used in subsequent fraudulent claim schemes.

52.     Dune also submitted claims to Medicare for more than 115 beneficiaries who were deceased prior to the date of service listed on the claim. Several of those beneficiaries died more than three years before the date of service listed on the claim.

### Claims Analysis: Prospect

53.     A review of Medicare claims data revealed that Prospect began submitting claims to Medicare around May 2024. Then from around May 2024 through around August 19, 2024, Prospect submitted more than 28,000 claims for over 17,000 Medicare beneficiaries, resulting in claims reimbursement requests of over $45.6 million.

54.     Data analysis showed that Medicare has approved disbursement of more than $17.8 million to Prospect.

55.     Of the total claims Prospect submitted to Medicare, more than $45.1 million were billed to Medicare in the 60-day period ending August 19, 2024, which represented an increase of over 8,600% when compared to the previous 60 days.

56.     Furthermore, analysis of claims data showed that for approximately 70% of the claims Prospect submitted, the beneficiary that allegedly received DME had no prior relationship

14

with the provider that allegedly ordered the DME. The significance of this is explained in paragraph 50.

57.     Claims data also showed that approximately 77% of the beneficiaries on whose behalf Prospect billed Medicare were identified in a separate investigation indicating that their identities were compromised and used unlawfully by individuals to obtain fraudulent reimbursements from Medicare.

58.     Prospect also submitted claims to Medicare for more than 50 beneficiaries who were deceased prior to the date of service listed on the claim. Several of those beneficiaries died more than three years before the date of service listed on the claim.

### Interviews of Beneficiaries

59.     Investigators interviewed numerous beneficiaries who submitted complaints to Medicare/HHS. For example, Medicare beneficiary L.M. was interviewed by investigators in August 2024 after she previously contacted HHS-OIG's fraud hotline. L.M. reported that a back brace she did not need or want was delivered to her home with a return address from Onyx Med Supply listed on the box and paperwork from Dune Medical Supply enclosed.

60.     In or around August 2024, Dune submitted a claim totaling approximately $1,533 to Medicare on behalf of L.M. for a prefabricated back brace (HCPCS L0635).

61.     In or around July 2024, Dune submitted claims totaling approximately $1,963 to Medicare for a customized back brace (HCPCS L0637) purportedly provided to beneficiary, D.U.

62.     Law enforcement officers interviewed K.G., daughter of Medicare beneficiary D.U. K.G. advised her mother, who resides in an assisted living facility, received a box containing a back brace. The box also contained documents which referenced Medicare would pay for it. D.U. informed K.G. that she did not order the brace. K.G. noted D.U. has suffered chronic back pain for

15

a long time but does not do anything to treat it other than aspirin. K.G. provided photos of the brace, packaging, and documentation.

63.     Around August 2024, Dune submitted claims totaling approximately $1,715 to Medicare for a back brace (HCPCS L0651) purportedly provided to beneficiary, K.D.

64.     Law enforcement officers interviewed K.D. who confirmed she previously submitted a complaint regarding Dune Medical Supply. According to K.D., she received a box with no return label which contained a back brace. K.D. was not aware she was going to receive this brace because she does not have any problems with her back. She did not order the brace and believes her doctor would have called her if he had ordered it for her. K.D. attempted to contact Dune on two occasions. She left messages which were not returned.

65.     Claims data revealed in or around July 2024, Dune submitted claims totaling approximately $4,397 to Medicare for a back brace and knee braces (HCPCS L0651, L2397, L1852) for Medicare beneficiary, T.P.

66.     Law enforcement officers interviewed T.P. T.P. stated that he received a package that contained an invoice and several back and leg braces that he had not requested. T.P. stated that he contacted his physician regarding these braces and his doctor's nurse confirmed there had been no order for these braces from their office. T.P. stated that he called a company in High Point about returning the braces, and he was told that they had a piece of paper with his doctor's signature on it. The employee at this company told T.P. not to worry, the braces had already been paid for and there would be no expense to him. T.P. stated that there were two companies involved in the shipment of the braces and the company in High Point was not the same as the company listed on the package.

16

67.     Medicare claims data also revealed in or around June 2024, Dune submitted claims on behalf of beneficiary, S.L., for a back brace and knee braces, allegedly prescribed by Dr. S.P., totaling approximately $4,397 (HCPCS L0651, L2397, L1852).

68.     Law enforcement officers interviewed the alleged prescribing physician, Dr. S.P. Dr. S.P. confirmed she was informed by her patient, S.L., that they had received a back brace and knee braces. Dr. S.P. advised she did not order the braces and the patient does not have any medical problems which would necessitate a back brace or knee braces. Dr. S.P. does not recall receiving any phone calls or faxes asking her to sign an order for these items. Dr. S.P. noted she does not generally order braces as part of her practice.

69.     Several Medicare beneficiaries for whom Prospect and Dune submitted DME claims reported in complaints to Medicare that the fraudulent DME packages they received showed that the package was shipped from Onyx.

### Use of Google Accounts in Alleged Scheme

70.     Probable cause exists to believe that evidence of the SUBJECT OFFENSES, as set forth in Attachment B, will be found in the TARGET ACCOUNTS, identified in Attachments A, as further described below.

*Interview of Hamza and Subpoena to Onyx*

71.     Law enforcement officers conducted a voluntary interview of Hamza Khawaja, the owner of Onyx Med Supply, a shipper of DME for Dune and Prospect.

72.     According to Hamza, he solicited Ahmed for Onyx to be the provider of DME for Dune and Prospect. Ahmed referred Hamza to a different individual, also known by the name Chaudhry (LNU), telephone number 336-587-3223, who Ahmed advised manages the DME business since he did not know much about it. Ahmed informed investigators that Izhan was the

17

user of telephone number 336-587-3223. Hamza claimed that he spoke with Chaudhry (LNU) and signed contracts with Dune and Prospect to begin shipping DME on behalf of Dune/Prospect. Hamza advised he only spoke to Chaudhry (LNU) by telephone on a couple of occasions. He indicated his primary form of communication with Dune and Prospect was via the e-mail addresses dunemedicalsupply@gmail.com and prospecthealthsolutions@gmail.com, respectively.

73.    Hamza also explained the process Dune/Prospect and Onyx used relating to the ordering, shipment, invoicing, and payment of DME. When ordering the DME, someone from Dune and Prospect would upload Excel spreadsheets via an online dropbox. The spreadsheets contained information needed for Onyx to drop ship DME to the requested individuals. Some of the information on the spreadsheets included the patients' names and addresses, as well as the type of DME to ship them. During the interview, Hamza showed investigators the dropbox on his telephone. The dropbox contained folders for both Dune and Prospect. In one folder, there were folders by month, which contained folders by date. In a folder for July 1, 2024, there was a file named "07-01-2024 orders.xls." This file contained various information including names, addresses, phone numbers, product codes, and sizes. Hamza voluntarily provided an example of one of the spreadsheets using his cellular telephone. Hamza sent the example to investigators from his phone using the e-mail address onyxmedsupply@gmail.com.

74.    For invoicing, Onyx sent detailed invoices for the DME they shipped via e-mail to the above e-mail addresses for Dune and Prospect. Payments for these invoices were normally made by Ahmed to Onyx using Chase Bank cashier's checks. Ahmed confirmed that he obtained cashier's checks for Onyx, but at the direction of Izhan, and Ahmed always provided the cashier's checks directly to Izhan and Hamza. According to Hamza, the payments for Dune and Prospect invoices both came from Prospect.

18

*Billing Companies*

75.     Dune submitted documents to Medicare identifying two companies as its billers: ACC-Q-Data Florida, LLC (ACC-Q) and MedBill Ease, Inc. (MedBill Ease). Prospect also submitted documents to Medicare identifying MedBill Ease as its biller. The "Billing and Collection Agreement" between each of the billing companies and Dune describe MedBill Ease and ACC-Q as "engaged in the business of electronically processing claims on behalf of…providers of health-related services to reimbursement agencies and insurance carries…" The agreements go on to state that MedBill Ease and ACC-Q would "provide billing services and transmit medical claims to various insurance carriers" for Dune. Identical language appears in an agreement between MedBill Ease and Prospect.

76.     As part of the investigation, law enforcement interviewed a MedBill Ease employee in November 2024. The employee confirmed that MedBill Ease provided medical billing services to Dune and Prospect. The employee stated that Dune and Prospect provided patient and billing information to MedBill Ease via an online dropbox. The information would be uploaded to the dropbox by someone at Dune and Prospect using the email accounts dunemedicalsupply@gmail.com and prospecthealthsolutions@gmail.com. MedBill Ease employees would then access the dropbox and download the information using MedBill Ease's email account, which investigators later learned to be medbileaseinc@gmail.com.

*Google Search Warrant*

77.     As part of the investigation, a search warrant was served on Google in November 2024 for information related to email accounts including dunemedicalsupply@gmail.com, prospecthealthsolutions@gmail.com,          onyxmedsupply@gmail.com,          and medbileaseinc@gmail.com.

19

78.     Included in documents produced in response to the warrant were numerous email messages from July 2024, in which the email address order.onyxmed@gmail.com was routinely used to send Dune and Prospect information about medical equipment shipped to Medicare beneficiaries.

*order.onyxmed@gmail.com*

79.     For example, on July 22, 2024, order.onyxmed@gmail.com sent a message to prospecthealthsolutions@gmail.com stating:    "Tracking from 07-12-2024 to 07-18-2024." Attached to the message were five spreadsheets containing shipping dates, tracking numbers, and the names of dozens of individuals to whom medical equipment was shipped.  Multiple email messages with similar attachments were sent from order.onyxmed@gmail.com to Dune and Prospect throughout July 2024.

80.     Additionally, on July 1, 2024, the email address order.onyxmed@gmail.com was used to invite Prospect to a shared Google Drive folder.  A message sent to Prospect from "Onyx Med Supply via Google Drive drive-shares-dm-noreply@google.com" stated: "Onyx Med Supply (order.onyxmed@gmail.com) has invited you to contribute to the following shared folder: Prospect Health Solutions".

81.     Also included in Google's search warrant production were hundreds of email messages between Dune, Prospect, MedBill Ease, and Onyx related to medical equipment returned by the recipients.

*return.onyxmed@gmail.com*

82.     From   July   through   November   2024,   Onyx   used   the   email   address return.onyxmed@gmail.com to send and receive hundreds of messages to and from Dune and Prospect containing information about returned medical equipment.

20

83.     For   example,   a   message   from   return.onyxmed@gmail.com   to
dunemedicalysupply@gmail.com sent on August 28, 2024 with the subject line "Returns
Processed" stated, "We have received the calls from following customers and we have initiated
their returns and collected the product back."   The message goes on to list the names of 45
individuals.

84.     In   another   example,   a   message   from   return.onyxmed@gmail.com   to
prospecthealthsolutions@gmail.com sent on August 19, 2024 with the subject line "Following
Returns have been recieved [sic] at the warehouse" stated, "We have received following returns
as customers have refused them." Attached to the email is a PDF document with a six-page list of
handwritten names of individuals.

*assistantdirector39@gmail.com*

85.     Included in Google's search warrant production were email messages showing
MedBill Ease sent detailed Medicare billing information related to Dune and Prospect to the email
address assistantdirector39@gmail.com.

86.     In June, July, and August of 2024, Medbill Ease sent emails with dozens of attached
Medicare   Remittance   Advices   for   Dune   and   Prospect   to   assistantdirector39@gmail.com.
Dunemedicalsupply@gmail.com and prospecthealthsolutions@gmail.com were copied on these
messages.  The Medicare Remittance Advices detailed claims submitted to Medicare by Dune and
Prospect for a given time period.  The reports include patient and claim identifying information as
well as the amounts billed to Medicare and the amounts the program paid for the claims.

87.     For example, on August 24, 2024, medbileaseinc@gmail.com sent a message to
asssitantdirector39@gmail.com   with   the   subject   line   "Re:   Prospect   EOBs   August   2024".
Prospecthealthsolutions@gmail.com was copied on the message.  Attached to the message were

fifty Medicare Remittance Advices with detailed claims information for numerous claims submitted to Medicare by Prospect.

88.     Only a few minutes later on the same date, medbileaseinc@gmail.com sent a message to asssitantdirector39@gmail.com with subject line "Re: Dune EOBs August 2024" and dunemedicalysupply@gmail.com was copied on the message. Attached to the message were forty-six Medicare Remittance Advices with detailed claims information for numerous claims submitted to Medicare by Dune.

*khawajaizhan@gmail.com*

89.     Also included in Google's search warrant production were email messages showing Izhan used the email account khawajaizhan@gmail.com in 2023 to help take ownership of Dune and Prospect.

90.     For example, on May 29, 2023, Izhan sent an email message with an attached purchase agreement from khawajaizhan@gmail.com to prospecthealthsolutions@gmail.com. The message stated, "I have attached the agreement. Please have a look at it and let me know what you think. Get back to me with any questions you have. Thank you, Izhan Khawaja". The agreement attached to the email proposed that Izhan would buy Prospect from the prior owner for $70,000.

91.     In February 2023, the khawajaizhan@gmail.com account was used to send a photo of Dune's office, a Dune company logo, payment confirmation for internet service, and new employee documents to dunemedicalsupply@gmail.com.

92.     In 2024, the khawajaizhan@gmail.com account was used to conduct business on behalf of Onyx. For example, on June 25, 2024, an account manager for a medical equipment supplier communicated with Izhan at his khawajaizhan@gmail.com email address regarding a shipment of knee braces for Onyx: "Hi Izhan, We should be able to ship the L1852's that are on

22

pending invoices 56051 (attached) on Thursday or Friday. Also, there are more L1852's that will be ready on July 10. Should we go ahead and air them in?" Izhan responded, "I can send the transfer tomorrow. Would be needing the same amount around july 8th. Best, Izhan A. Khawaja"

93.     Additionally, on June 17 and July 5, 2024, Izhan received a credit application and business agreement from two DME suppliers at the khawajaizhan@gmail.com account and he forwarded each to onyxmedsupply@gmail.com.

94.     On July 29, 2024, the DME supplier account manager mentioned above notified Izhan at khawajaizhan@gmail.com and Onyx at onyxmedsupply@gmail.com about calls from patients regarding braces they have received. The account manager stated, "We have been getting many calls from patients trying to get in contact with someone about the braces they were sent. They usually get our number from the patient guide that comes with the braces but they say the shipping label says Onyx. What number can we provide them with?"

Criminal Charges

95.     On August 23, 2024, Chaudhry Ahmed was arrested pursuant to a criminal complaint charging him with health care fraud. On February 3, 2025, Chaudhry Ahmed pleaded guilty to conspiracy to commit an offense against the United States, specifically, conspiracy to launder money under 18 U.S.C. § 1957, and in violation of 18 U.S.C. § 371. The charge stems from the underlying conduct and investigation described in this affidavit.

96.     On December 31, 2024, Hamza Khawaja was arrested on a criminal complaint. On January 13, 2025, a federal grand jury returned an indictment against Hamza Khawaja charging him with obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3).

97.     On May 27, 2025, a federal grand jury returned a superseding indictment against Hamza Khawaja adding an additional defendant, Izhan Khawaja, and adding eleven counts to the

23

indictment. Hamza Khawaja is now charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), four counts of illegal monetary transaction money laundering, in violation of 18 U.S.C. § 1957, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). Izhan Khawaja is charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and six counts of illegal monetary transaction money laundering in violation of 18 U.S.C. § 1957. The money laundering and obstruction of justice charge stem from the underlying conduct and investigation outlined in this affidavit.

<u>Conclusion</u>

98.    The information contained in this affidavit indicates there is probable cause to believe that the SUBJECT OFFENSES have been committed by Izhan Khawaja, Hamza Khawaja, Chaudhry Ahmed, individuals still unknown, and companies attributed to Chaudhry Ahmed, including Dune Medical Supply, LLC, and Prospect Health Solutions, Inc. I further submit that based on the evidence set forth above, and all reasonable inferences from that evidence, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of these criminal violations may be found in Google's records of the TARGET ACCOUNTS.

99.    Based on the forgoing, I request that the Court issue the proposed search warrant.

100.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

24

Respectfully submitted,

*/s/ Andrew LeFaivre*
Andrew LeFaivre, Special Agent
U.S. Department of Health and Human Services
Office of Inspector General
Office of Investigations

In accordance with Rule 4.1(b)(2)(A), the Applicant appeared before me by telephone, was placed under oath, and attested to the contents of this Application, which was submitted to me by reliable electronic means.

06/20/25

Hon. L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina